## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**DONALD E. MORALES,**

     **Plaintiff,**

**vs.**                                     **No. CIV 99-452 MV/WWD**

**CITY OF ALBUQUERQUE, et. al.,**
          **Defendants.**

## <u>MEMORANDUM OPINION AND ORDER</u>

        **THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment on Plaintiff's Equal Protection and Due Process Claims  **[Doc. No. 20]**; Defendants' Motion for Summary Judgment on Plaintiff's Breach of Contract Claim **[Doc. No. 22]**; and Defendants' Motion for Summary Judgment on Plaintiff's Drug Testing Claim and to Dismiss Individual Defendants Anne Watkins and Lawrence Rael **[Doc No. 24]**.  The Court, having considered the briefs, relevant law and being otherwise fully informed, finds that the Motion for Summary Judgment on Plaintiff's Equal Protection and Due Process Claims is well taken and will be **GRANTED**; the Motion for Summary Judgment on Plaintiff's Breach of Contract Claim is well taken and will be **GRANTED**; and the Motion for Summary Judgment on Plaintiff's Drug Testing Claim and Motion to Dismiss Individual Defendants is well-taken in part and will be **GRANTED IN PART** and **DENIED IN PART** as to the Motion for Summary Judgment on Plaintff's Drug Testing Claim and to Dismiss Individual Defendants Anne Watkins and Lawrence Rael.

1

## FACTUAL BACKGROUND

The Court finds the following material facts to be undisputed:[1]  Plaintiff Donald Morales was a Grade B-10 Mechanic III employed by the City of Albuquerque's Transit Department since 1994.  Prior to his termination in April, 1996, Mr. Morales had a spotless attendance, disciplinary and performance record.  In January 1995, the City's Transit and Parking Department instituted a "Substance Abuse Policy for Safety-Sensitive Employees" pursuant to federal regulations.  Later in 1995, the City of Albuquerque established a City-wide testing policy which set forth termination as the penalty for employees of the Transit Department who refused to take the test.

AMFSCME, Local 624 is the Union representing the bargaining unit that includes mechanics at the Transit Department.  The City has entered into an arbitration agreement with Local 624 which requires arbitration of grievances by blue collar bargaining unit employees.  The Union and the City have not established a drug testing policy or consequent penalties for the Union members. However, it is conceded that drug testing is a subject of collective bargaining negotiations.

Plaintiff was working as a mechanical the Transit Department on the graveyard shift from the evening of Sunday, April 21, 1996, to the early morning of Monday, April 22, 1996. Approximately an hour before the end of his shift, at 6:30 AM, a supervisor informed Plaintiff that he was required to accompany him immediately for a drug test.  The drug testing facility is at a different location from where Plaintiff was working.  Plaintiff informed his supervisor that his shift

---

[1]        The Court accepts as undisputed all facts admitted by both parties and all facts for which no competent contrary evidence has been presented by the opposing party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Mere assertions that a fact is or is not controverted are insufficient. *Id.*

was ending in an hour and that he needed to bring his car home at the end of his shift so that he

could take his children to school.  Plaintiff also advised his supervisor that he had committed to

accompanying his daughter and her classmates on a field trip to the zoo.  Plaintiff asked whether

he could telephone his wife so that she could make alternative transportation arrangements, but

was refused by his supervisor.  Plaintiff also notified his supervisor that he had taken a drug test

earlier that year and that the drug test had been administered at the beginning of his shift.   The

supervisor informed Plaintiff that if he did not take the drug test immediately he would be subject

to discipline, up to and including termination. Plaintiff then spoke with another supervisor who

advised him that City policy required him to take the drug test immediately.  Plaintiff refused to

take the test at that immediate time and was consequently placed on administrative leave effective

7:30 a.m. at April 22, 1996.  Plaintiff was purportedly selected for the random drug testing on

Thursday, April 18, 1996 - four days prior to this incident.  At the time, Plaintiff was attending a

City training class at another site.  There is a dispute of fact as to whether it was feasible to call

Plaintiff in for testing at that time.  There is no evidence that Plaintiff used any illegal substances

during his employment with the Transit Department.

Following the incident, Plaintiff was scheduled for a pre-termination hearing on April 26,

1996.  After that hearing, Plaintiff was terminated by Transit Director Anne Watkins on the

grounds that he had violated the City's drug testing policy by refusing to take a drug test.  The

City Charter sets forth that there shall be "appropriate grievance and appeal procedures for

classified employees and an active personnel board composed of individuals not employed by the

City."  The City's Merit System Ordinance has established an entire grievance procedure, which

provides for a pre and post-termination proceeding as well as review by a court of the termination

3

decision.  However as a member of the of the Local 624 union, Plaintiff was entitled to a shared

cost binding arbitration, rather than the grievance procedures set forth in the Merit System

Ordinance.  After some delay, the union submitted Plaintiff's grievance to an arbitrator, where

Plaintiff was represented by counsel.  The arbitration was limited to the issue of whether Plaintiff

was terminated for "just cause."  The arbitrator ruled that the City had a valid drug testing policy

which Plaintiff had violated and upheld the termination.

　　　　The City's Labor-Management Relations Board has subsequently ruled that the City

Transit Department's drug testing policy and practice was invalid, and the imposition of the policy

on members of the blue collar bargaining unit without bargaining over the issue constituted a

Prohibited  Labor Practice.

## LEGAL STANDARD OF REVIEW

　　　　Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are

intended to "'secure the just, speedy and inexpensive determination of every action.'" *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1).  Under Rule 56(c),

summary judgment is appropriate when the Court, viewing the record in the light most favorable

to the non-moving party, determines that "there is no genuine dispute over a material fact and the

moving party is entitled to judgment as a matter of law." *Thrasher v. B&B Chemical Co.*, 2 F.3d

995, 996 (10th Cir. 1993).  The movant bears the initial burden of showing "there is an absence of

evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939

F.2d 887, 891 (10th Cir. 1991).  Once the movant meets this burden, Rule 56(e) "requires the

nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions,

answers to interrogatories, and admissions on file,' designate specific facts showing that there is a

4

genuine issue for trial." *Celotex*, 477 U.S. at 324.  "Where the record taken as a whole could not

lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the material submitted by the parties in support of and in opposition to the

motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United*

*States*, 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by

demonstrating to the district court that there is an absence of evidence to support the nonmoving

party's case. *Celotex*, 477 U.S. at 325.  In such a situation, the moving party is entitled to

judgment as a matter of law, "because the nonmoving party has failed to make a sufficient

showing on an essential element of her case with respect to which she has the burden of proof."

*Id.* at 322.

## DISCUSSION

I.     **Defendants' Motion for Summary Judgment as to Plaintiff's Due Process and Equal
       Protection Claims**

A.     Procedural Due Process Claim

Plaintiff argues that the collective bargaining agreement, whereby he was entitled to

arbitration rather than a "trial-like" post-termination hearing, deprived him of his procedural due

process rights to an adequate post-termination remedy.  The Fourteenth Amendment of the

United States Constitution states, in relevant part: "nor shall any State deprive any person of life,

liberty, or property, without due process of law."  The Supreme Court has held that "[a]n

essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by

notice and opportunity for hearing appropriate to the nature of the case.' " *Cleveland Board of*

*Educ. v. Loudermill*, 470 U.S. 532, 542 (1984) (*quoting Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950).  Prior to any deprivation of a significant property interest, an individual must be given an opportunity for a hearing before he is deprived of any significant property interest.  *Id., see also Boddie v. Connecticut*, 401 U.S. 371, 379 (1971).  In the context of public employment this principle requires "some kind of a hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment. *Board of Regents v. Roth*, 408 U.S. at 569-570; *Perry v. Sindermann*, 408 U.S. 593, 599 (1972).  The parties agree that Plaintiff was entitled to a pre-termination and post-termination hearing which comported with his due process rights. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. at 542.  A full evidentiary hearing is not required prior to termination.  *Id.* at 545; *see also West v. Grand County*, 967 F.2d 362, 368 (10th Cir. 1992) (stating that *Loudermill* requirements are not very stringent).   "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546 (citation omitted).  "Implicit in this final requirement is that the hearing officer must not have already made up his mind to terminate the employee before hearing the employee's view of the events in question." *Pike v. Gallagher*, 829 F. Supp. 1254, 1271 (D.N.M. 1983) (*citing Loudermill*, 470 U.S. at 543).

Defendants do not dispute that Plaintiff possessed procedural due process rights, but rather argue that the arbitration constituted an adequate post-termination remedy.  Indeed, from the record it appears that Plaintiff was allowed an adversarial hearing, where he was fully represented by counsel, during which he was entitled to present evidence and arguments in support of his position. Plaintiff first argues that he was unlawfully deprived of the quasi-judicial

post-termination grievance proceedings set forth in the Merit System Ordinance by virtue of the

collective bargaining agreement under which he was bound.  Plaintiff contends that the arbitration

proceeding set forth in the collective bargaining agreement is constitutionally deficient in that it

does not entitle Plaintiff to counsel, the union controls the course of the arbitration, the union

selects and pays a part of the arbitration, and limits the remedies available.  In a misplaced

argument, Plaintiff contends that an employee covered by a union contract's mandatary arbitration

clause may not lawfully be precluded from participating in the administrative grievance process.

As support for this proposition, Plaintiff cites to a number of cases holding that statutory

employee rights may not be waived under collective bargaining agreements.  *See, e.g., Alexander*

*v. Gardner-Denver Co.*, 415 U.S. 36 (1974) (employee cannot waive right to judicial

determination of anti-discrimination claims pursuant to a collective bargaining agreement).

Plaintiff misconstrues the scope of the collective bargaining agreement.  As a participant in the

collective bargaining agreement, Plaintiff did not waive any statutory anti-discrimination rights, or

any statutory rights for that matter.  Rather, Plaintiff waived the contractual right to the

administrative grievance process to resolve his contract claims, and in its place agreed to an

arbitration proceeding for the resolution of contract claims.  Plaintiff is still free to pursue his

constitutional claims, as well as any statutory claims he may have in federal court. From the

evidence it also appears that Plaintiff received a constitutionally adequate post-termination

proceeding.   Plaintiff is correct in his assertion that he has a due process right to representation at

any post-termination proceeding.  *See Workman v. Jordan*, 32 F.3d 475, 480 (10th CIr. 1994).

Although the arbitration procedure set forth in the collective bargaining agreement does not

provide for a right of counsel, unions have a federal duty to fairly represent their members in

grievance proceedings with the employer.  *See Vaca v. Sipes*, 386 U.S. 171, 190 (1967); *Garcia v. Eidal Int'l Corp.*, 808 F.2d 717, 720 (10th Cir. 1987).  In this case it is clear that the union, acting pursuant to their federal duty, provided Plaintiff with "learned counsel" who represented him throughout the proceeding.  The record also demonstrates that Plaintiff was able to present his evidence and arguments and that the arbitrator considered both sides of the issue.  Finally, there is nothing to indicate the presence of unfair bias during the arbitration proceeding.  *See Hicks v. City of Watonga, Oklahoma*, 942 F.2d 737, 746-47 (10th Cir. 1991) ("Due process is violated only when the risk of unfairness is intolerably high under the circumstances of the particular case.  Because honesty and integrity are presumed on the part of the tribunal, there must be some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated.")  (*quoting Mangels v. Pena*, 789 836, 838 (10th Cir. 1986) (internal quotations omitted).  Notwithstanding any limitations of the arbitration agreement, the arbitration procedure as it was applied to Plaintiff fully comports with his procedural due process rights to a post-termination remedy.  Accordingly, Defendants' motion for summary judgment on Plaintiff's procedural due process claim is granted.

B.    Substantive Due Process Claim

        Plaintiff also alleges that his termination deprived him of his substantive due process interest in his employment.  The substantive component of the Due Process clause protects "those rights that are fundamental", that is, rights that are "implicit in the concept of ordered liberty." *Palko v. Connecticut*, 302 U.S. 319, 325 (1937).  As observed by the Tenth Circuit, "[i]t is not clear what interest is required to trigger substantive due process guarantees." *Archuleta v. Colorado Dept. of Institutions*, 936 F2d 483, 489, n.6 (10th Cir. 1991).  The Supreme Court has

deemed that most of the rights enumerated in the Bill of Rights are fundamental.  Certain

unenumerated rights, such as the right to privacy, also merit substantive due process protection.

*See Planned Parenthood v. Casey*, 510 U.S.1309 (1992).  A finding that a right merits

substantive due process protection means that the right is protected "against certain government

actions regardless of the fairness of the procedures used to implement them." *Collins v. City of

Harker Heights*, 503 U.S. 115, 125 (1992).  The Supreme Court has been "reluctant to expand

the concept of substantive due process because guideposts for responsible decisionmaking in this

uncharted area are scarce and open-ended.  The doctrine of judicial self-restraint requires us to

exercise the utmost care whenever we are asked to break new ground." *Id.*  Since substantive

due process rights are "created only by the Constitution," areas in which substantive rights are

created by virtue of state law (such as tort law) remain largely outside the scope of substantive

due process doctrine.  *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229 (1985) (J. Powell

concurring).  The Tenth Circuit has likewise held that "[r]ights of substantive due process are

founded not upon state provisions but upon deeply rooted notions of personal fundamental

interest derived from the Constitution."  *Mangels v. Pena*, 789 F.2d 836, 839 (10th Cir. 1986)

(citation omitted)

The Tenth Circuit has wavered on the issue of whether public employment is protected by

the substantive due process clause.  In *Martin v. Harrah*, 579 F.2d 1192 (1978), the Tenth Circuit

had recognized a tenured teacher's constitutionally protected property interest and found that the

plaintiff's termination violated his guarantees of substantive due process.  The Supreme Court

reversed the Tenth Circuit, holding, in a per curium opinion,  that the tenured teacher's interest in

his employment was not arbitrarily deprived in violation of his substantive due process rights.

9

*Harrah Independent School District v. Martin*, 440 U.S. 194 (1979). Implicit in this holding was recognition that public employment could in fact trigger substantive due process guarantees. Likewise, in *Brenna v. Southern Colorado State College*, 589 F.2d 475 (10th Cir. 1978), the Tenth Circuit held that a tenured employee had a substantive due process interest in his employment. Notwithstanding the *Martin* and *Brenna* decisions, the Tenth Circuit has currently retreated from this position, finding instead that it is unclear whether employment is a fundamental right protected by the substantive component of the due process clause. *See Herrera v. City of Albuquerque*, 1999 WL 815815 at *2 (10th cir. 1999) (unpublished opinion) (stating "[a]t present, the question of whether a tenured employee's property interest in continued employment is subject to substantive due process protections is unsettled"); *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1257 (10th Cir. 1998) (stating "our circuit precedent does not clearly delineate what specific property interests in employment are fundamental, and thus protected by the doctrine of substantive due process"); *Curtis v. Oklahoma City Public Schools Bd.*, 147 F.3d 1200, 1215, n.7 (10th Cir. 1998); *Archuleta v. Colorado Dept. of Institutions*, 936 F2d 483, 489, n.6 (10th Cir. 1991).

The Circuit Courts of Appeals are similarly divided on whether public employment encompasses a substantive due process right, with the Fourth, Sixth, Seventh, Eight and Eleventh Circuits concluding that there is no substantive due process right to employment, while the First, Second and Fifth Circuits have held that such a right does exist. *Compare Newmand v. Com. of Mass.*, 884 F.2d 19, 25 (1st Cir. 1989) (public employment is a property interest deserving of substantive due process guarantees); *Gargiul v. Tompkins*, 704 F.2d 661, 668 (2nd Cir. 1983) (vacated on other grounds, 465 U.S. 1016 (same); *Harrington v. Harris* 118 F3d 359, 368 (5th

10

Cir. 1997) (same) *with Huang v. Bd of Governors of Univ. of N.C.*, 902 F.2d 1134, 1142, n.10

(4th Cir. 1990) (state created employment does not enjoy substantive due process protection);

*Valot v. Southeast Local School Dist. Bd. of Educ.*, 107 F.3d 1220, 1244 (6th Cir. 1997) (same);

*Brown v. Brienen*, 772 F.2d 360 (7th Cir. 1983) (same); *Singleton v, Cecil*, 176 F.3d 419, 428

(8th Cir. 1999) (same), *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994) (en banc), *cert. denied*,

513 U.S. 1110 (1995).

 Several courts in this district have adopted the reasoning of the Eleventh Circuit in

*McKinney v. Pate* and held that there is no substantive due process right to state created public

employment. *See Roe v. Antle*, 964 F. Supp 1522 (D.N.M. 1997) (J. Black); *Widmer v. State of*

*New Mexico*, Civ. No. 94-672 (J. Parker) slip op. at 8 (D.N.M. October 1998) (relying on *Roe v.*

*Antle*); *Herrera v. City of Albuquerque*, Civ. No. 97-756 (J. Campos) slip op. (August 13, 1998),

aff'd 1999 WL 815815 (10th Cir.) (unpublished opinion); *Cibas v. Lockwood*, Civ. No. 90-341 (J.

Conway) slip op. (D.N.M. August 22, 1994); *cf. Garcia v. State of New Mexico Officer of the*

*Treasurer, et. al.,* 959 F. Supp. 1426, 1430 (D.N.M.1997) (stating "this Court has a great deal of

difficulty with the view that such a [substantive due process right to public employment] exists.")

In making its determination the *McKinney* court engaged in a thorough analysis of the nature of

substantive due process rights.  First the court noted the Supreme Court's expressed reluctance to

expand substantive due process rights.  The *McKinney* court further noted that substantive due

process rights are derived from constitutionally protected interests, rather than state created

rights.  The court also observed that the Supreme Court has rejected a substantive due process

protection of a public employee's liberty, as distinguished from property, interest in claims

involving pretextual termination.  *See McKinney*, 20 F.3d at 1559 (*citing Bishop v. Wood,* 426

U.S. 341) (1976) (holding that the Due Process clause is not a guarantee against incorrect or ill-advised personnel decisions)).  Finally, the *McKinney* court relied on its conclusion that procedural due process remedies are more appropriately applied to wrongful termination cases than are substantive due process remedies stating "[i]n substantive due process cases, the claimant seeks compensatory damages for the value of the deprived right.  In procedural due process cases, however, although the claimant may seek compensatory damages, the primary relief sought is equitable."  *Id.* at 1560.  Like the sister courts in this district, this Court is similarly persuaded by the *McKinney* court's reasoning.  In particular, the Court heeds the Supreme Court's caution against recognizing new substantive due process rights.  The Court also defers to the Tenth Circuit's observation that "[r]ights of substantive due process are founded not upon state provisions but upon deeply rooted notions of personal fundamental interest derived from the Constitution."  *Mangels v. Pena*, 789 F.2d at 839.  In this case, Plaintiff is claiming a substantive due process interest in his state created employment contract.  This interest is founded solely upon state provisions, rather than upon a constitutionally derived fundamental interest.  The Court therefore finds that Plaintiff did not hold a substantive due process protection in his public employment.  As such, Defendant's motion for summary judgment on Plaintiff's substantive due process claim is granted.

C.     Equal Protection Claim

       Plaintiff also raises an equal protection claim, however fails to offer any evidence suggesting that he was treated any differently than similarly situated employees.  *See Bucley Construction, Inc. v. Shawnee Civic & Cultural Devlop. Auth.*, 933 F.2d 853, 859 (10th Cir. 1991).  As such, Defendant's motion for summary judgment on this claim is granted.

**II.    Defendants' Motion for Summary Judgment As to Plaintiff's Breach of Contract**

**Claim**

Plaintiff brings a claim for breach of contract asserting that the arbitration procedure set forth in the collective bargaining agreement violates his rights under the City Charter, and that he was impermissibly terminated without just cause as required in the collective bargaining agreement.  In response, Defendant moves for summary judgment arguing that the collective bargaining agreement properly provided for arbitration in compliance with the City Charter, the arbitration provision provides for Plaintiff's exclusive and final remedies, and Plaintiff was in fact terminated for just cause.

Plaintiff asserts that his employment contract included the City Charter, the City's Personnel Rules and Regulations and the Merit System Ordinance.  The Merit System Ordinance § 3-1-23 sets out an entire grievance resolution procedure, however, provides that this procedure "shall not apply to bargaining unit employees if their certified exclusive bargaining representative has collectively bargained to establish an arbitration procedure for the resolution of grievances..." In this case, it is undisputed that the City recognized "Local 624 as the sole exclusive bargaining representative...for the employees" in the transit department of which Plaintiff was a member.  In March, 1996, Local 624 adopted a Collective Bargaining Agreement  which bound both the City and Plaintiff as a member of the union.  Section 30J of the collective bargaining agreement sets forth the Grievance Procedure, which requires "binding, shared cost arbitration for the resolution of alleged contract violations and all discipline related grievances..." including termination from employment.

Plaintiff first argues that the City violated Plaintiff's rights under the City Charter which

provides that there shall be a merit system setting forth "appropriate grievance and appeal procedures for classified employees and an active personnel board composed of individuals not employed by the City." Implicit in this argument, Plaintiff is asserting that he did not waive his rights to the grievance procedure set out in the Merit System Ordinance by virtue of the collective bargaining agreement which provides for binding arbitration in lieu of the administrative grievance procedure. However, the Merit System Ordinance clearly states that the administrative grievance procedures are not applicable to an employee whose union has collectively bargained to establish an arbitration procedure for grievances. The City has clearly followed the parameters of the Merit System Ordinance by adopting an arbitration system through collective bargaining with the Plaintiff's union. In addition, there is no evidence that the City failed to follow the procedures created by the collective bargaining agreement. Furthermore, Plaintiff's exact argument has been rejected by the District of New Mexico and the Tenth Circuit in *Herrera v. City of Albuquerque* which both held that mandatory binding arbitration agreements did not deprive a terminated employee of his contractual rights. *See Herrera*, Civ. No. 97-756 (J. Campos (August 13, 1998), *aff'd* 1999 WL 815815 (10th Cir. 1999). There is, accordingly, no evidence that the City breached its employment contract with Plaintiff by utilizing the arbitration procedure pursuant to the collective bargaining agreement rather than the grievance procedure created by the Merit System Ordinance.

Plaintiff next contends that the arbitrator erred in concluding that Plaintiff's refusal to submit to a drug test on the morning of April 22, 1996 constituted just cause for termination. Defendants respond that the arbitrator's decision is final and exclusive and cannot be displaced by this Court. Federal labor policy looks favorably on binding arbitration, based upon policies such

as promotion of labor peace and enhancement of workers' bargaining power.  Arbitration

procedures supplement the union's status as exclusive bargaining representative by assigning it

responsibility for the handling of individual grievances.  *See Galion v. Dollar,* 666 F2d 1309 (10th

Cir. 1981).  Thus the rule evolved that arbitrated grievances may not be litigated in court when

the when the collective bargaining agreement provides for final and binding arbitration.  *Id., see*

*also United Steelworkers v. Manufacturing Co.,* 363 U.S. 564 (1960); *Balowski v. International*

*Union,* 372 F.2d 829 (6th Cir. 1967).   Nonetheless, there are limitations to the exclusivity rule

and its corollary, the exhaustion rule.  When a union breaches its duty of fair representation, the

arbitration process may be subject to judicial challenge.  *See Vaca v. Sipes*, 386 U.S. 171 (1967).

Likewise, employees may not be precluded from asserting certain statutory rights in court by

virtue of binding arbitration provisions that were not individually bargained for.  *See Gilmer v.*

*Interstate/Johnson Lane Corp*, 500 U.S. 20 (1991) (nonunion employee who individually

bargained for arbitration procedure could be precluded from statutory discrimination claim in

Court, rather than in arbitration proceeding)*; Alexander v. Gardener-Denver Co.*, 415 U.S. 36

(1974) (union contracts mandatory arbitration clause does not preclude employee from redressing

Title VII violations in federal court).

  Defendants contend that the arbitration agreement provides the Plaintiff's exclusive

remedies for his breach of contract claim. Under New Mexico law, the question of exclusiveness

of contractual arbitration remedies:

> turns upon the intention of the parties as revealed by the language of the Contract
> as a whole, the specific provisions relating to remedy, and all the facts of a
> particular case, such as the background of the Contract when executed, the
> conduct of the parties, and the nature of the subject matter involved.

*Hopper v. Reynolds*, 81 N.M 255, 260-61 (1970).  Under state law, an exclusive remedy is one "which provides for a plain, adequate and complete means of resolution through the administrative appeals to the courts."  *Peter Chavez v. City of Albuquerque*, 124 N.M. 479 (1997).  Applying these principles to the arbitration agreement at hand, the Court finds that the grievance procedure was in fact intended to be the exclusive remedy for all discipline related grievances.  The procedure established a comprehensive framework for resolution of grievances, beginning with an attempt at informal resolution and culminating with binding arbitration.  Specifically, the grievance procedure in this case provides a party with the right to a three-step informal grievance process, a right to arbitration, the right to appeal, and the right to challenge arbitrator's decision in Court within sixty calender days of receipt of the decision.[2]  The arbitration agreement also sets forth that the application standard of review on appeal shall be governed by the New Mexico Uniform Arbitration Act. Although the grievance procedure provides for only a limited right of judicial review, the comprehensive nature of the procedure suggests that the parties intended the grievance procedure, including the arbitration process, to be the exclusive remedy in this case.

Plaintiff argues that he should not be bound by the terms of the arbitration agreement, because it unlawfully limits his "constitutional and contractual rights."  The Court disagrees.

This is not a case where the arbitration agreement encompasses employee rights outside the scope of the employment contract, such as statutory or constitutional rights.  Rather, the arbitration agreement is limited to contractual grievances, including whether discipline or

---

[2] Although it is not clear whether Plaintiff adhered to the sixty day appeal period, as the parties do not raise this issue, the Court will presume that the procedure was followed by Plaintiff.

termination was properly imposed upon an employee.  Arbitration agreements are entirely

appropriate for the resolution of contractual rights.  Parties to a contract are entitled to

contractually establish the remedies available in the event of a breach.  *See Hopper v. Reynolds*,

81 N.M. 255; *Nez v. Forney*, 109 N.M.161 (1989).  An agreement as to available remedies may

include an agreement to submit a dispute to a particular forum or to use a particular procedure to

resolve a dispute.  *See, e.g., Shaw v. Kuhnel and Associates, Inc.*, 102 N.M. 607 (1985)

("generally parties are bound by their contractual agreements to resolve disputes in arbitration").

Having established the proper standard of review, the Court now turns to Plaintiff's

argument that the arbitrator erroneously determined that his termination was for "just cause" for

refusal to submit to the random drug test and accordingly, the arbitration determination should be

set aside.  The New Mexico Uniform Arbitration Act allows a court to vacate an arbitration

award where there is evidence of corruption, fraud, partiality or bias of the arbitrator, misconduct,

the arbitrators exceeded the scope of their powers, the arbitrators refused to postpone the hearing

upon cause, or where there is a lack of arbitration agreement.  *See* NMSA § 44-7-12.  Plaintiff has

not alleged that any of these elements have been met or offered any evidence of such.

Consequently, the Court has no grounds to vacate the arbitration determination that the

termination was for just cause.  Although the Court may have reached a different result than the

arbitrator in this case, the parties and the Court are bound by the terms of the collective

bargaining agreement which allows only limited judicial review of the arbitration decision.  As the

Supreme Court observed, "[c]ourts are not to "usurp those functions which collective-bargaining

contracts have properly 'entrusted to the arbitration tribunal.'" *Hines v. Anchor Motor Freight,

Inc.*, 424 U.S. 554, 561 (1974).  As such, the Defendant's motion for summary judgment as to

17

Plaintiff's breach of contract claim is granted.

**III.    Defendants' Motion for Summary Judgment as to Plaintiff's Drug Testing Claim**

      **and Motion to Dismiss Individual Defendants**

      A.    <u>Fourth Amendment Claim</u>

Plaintiff also raises a Fourth Amendment Claim alleging that the drug testing policy as it was applied to him constituted an unreasonable search and seizure in violation of the Fourth Amendment.  It is well established that a urinalysis drug test required by a governmental employer is a search protected by the Fourth Amendment.  *See Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 617-618 (1989); *National Treasury Employees Union v. Von Raab*, 489 U.S. 658, 678-79 (1989); *Rutherford v. City of Albuquerque*, 77 F.3d 1258, 1260 (10th Cir. 1996).  The Supreme Court has held that employee drug testing may be permissible without the usual protection of a warrant based on probable cause, and even without "any measure of individualized suspicion," *Von Raab*, 489 U.S. at 688; *Skinner*, 489 U.S. at 633 "when special needs, beyond the normal need for law enforcement make the warrant and probable cause requirement impracticable."  *Chandler v. Miller*, 520 U.S. 305 (1997).

Two general characteristics must be examined in determining whether there is a special need for drug testing:  (1) the legitimacy of the government's concerns regarding the threat of drug abuse to public safety, and (2) whether the testing scheme meets the related goals of detection and deterrence.  *Chandler v. Miller*, 520 U.S. 305;  *19  Solid Waste Dep. Mech. v. City of Albuquerque*, 156 F.3d 1068, 1073 (10th Cir. 1998).  Even with a showing of special need, a drug testing scheme will only be upheld if it is "reasonable."  *Id.* The reasonableness of drug testing is determined by balancing the public and private interests at stake.

18

> What is reasonable of course, "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself."...Thus, the permissibility of a particular practice "is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests."

*Skinner*, 489 U.S. at 619 (citations omitted).  In *Skinner*, the Court ruled that railroad employees' privacy expectations, which were limited because of the industry's pervasive regulation, were outweighed by the government's compelling interest in ensuring the safe operations of rails. Similarly, in *Von Raab,* the Court found that the government's interests in safety and the integrity of its borders outweighed the individual privacy expectations of custom officials who carry firearms or are involved in drug interdiction.  A crucial element to the Court's holding in these two cases, was that "the circumstances justifying toxological testing  and the permissible limits of such intrusions are denied narrowly and specifically in the regulations that authorize them." *Skinner*, 489 U.S. at 622; *Von Raab*, 489 U.S. at 667.  Thus, because "minimal discretion [was] invested in those charged with administering the program," the testing was upheld under the Fourth Amendment.  *Id*. Random drug testing has also been found reasonable, where the employees are "aware of the existence of a random drug-testing scheme, so while the precise time of the test will be unknown, the fact that they are subject to this search procedure will not be a surprise."  *Id*.

Here, the Plaintiff is not challenging the federal regulations which require the City of Albuquerque to implement a random drug testing program.  It appears that the parties are in agreement that there is a "special need" justifying the warrantless random drug testing policy of public transportation mechanics. Indeed, several courts have upheld policies requiring random drug testing of mechanics involved in public transportation because errors in their work can cause

vehicles to operate dangerously.  *See Bluestein v. Skinner*, 908 F. 2d 451, 456 (9th Cir. 1990)

(random drug testing of maintenance personnel); *English v. Talladega County Bd. of Educ*., 938

F. Supp. 77, 782 (N.D.Ala. 1996) (random drug testing of mechanics assistant who inspected and

repaired school buses); *Amer. Fed. of Gov. Emp. v. Thornburgh*, 798 F. Supp. 597,  599

(N.D.Ca. 1991); *Amer. Fed. of Gov. Emp. v Derwinski*, 777 F. Supp 1493, 1500 (N.D.Ca. 1991).

Rather, Plaintiff contends that the circumstances attending his particular random drug test,

and the manner in which the test was administered were wholly unreasonable, unnecessary and in

violation of his rights under the New Mexico and United States Constitution.  In particular,

Plaintiff challenges the timing of his test, the demand for immediate testing when in fact Plaintiff's

name had been selected for testing four days earlier, the refusal to acknowledge Plaintiff's prior

family commitment, the refusal to allow Plaintiff to telephone his wife to make prior

transportation arrangements, and the harassing and threatening manner by which the supervisors

attempted to coerce Plaintiff into submitting to the test.  Under these circumstances, the Court

agrees that Plaintiff has stated more than sufficient facts to support his claim that the drug testing

requirement was an unreasonable search and seizure.

The reasonableness of the drug testing policy is determined by balancing its intrusion on

the Plaintiff's privacy rights against the promotion of legitimate governmental interests.  *Skinner*,

489 U.S. at 619. Under this balancing equation on one side, the Court examines the nature of the

privacy interest upon which the search at issue intrudes and the character of the intrusion

complained of.  *See Veronia School District v. Acton*, 515 U.S., 646, 654-58 (1995).  On the

other side of the balancing the Court must consider the "nature and immediacy of the

governmental concern at issue...and the efficacy of [the challenged test] for meeting it.  *Id*. at 660.

Here the essence of Plaintiff's asserted privacy interest is his right to not have the drug testing policy administered in an intrusive and unreasonable manner which interferes with his prior personal and family commitments. Although Plaintiff's privacy interest is somewhat reduced by the extensive regulatory framework set up over the transportation industry, nothing in the federal regulations authorize or notify Plaintiff of the possibility that the drug testing policy could intrude into his off-work hours or require immediate rescheduling of his personal commitments. *See Skinner*, 489 U.S. at 627 (intrusion on privacy limited where the employees' expectations of privacy were "diminished by reason of their participation in an industry that is regulated pervasively to ensure safety.") In this case, the drug test was announced approximately an hour prior to the completion of Plaintiff's graveyard shift. Upon Plaintiff's recollection the drug testing process, including transportation time, takes approximately two and one-half hours to complete. Prior practice had led Plaintiff to reasonably expect that the drug testing policy would be administered solely within his working hours, as demonstrated by the January 1996 drug test administered at the beginning of Plaintiff's work shift. On the day in question, Plaintiff had arranged, upon the completion of his graveyard shift, to drive his children to school and accompany his daughter on a school-sponsored field trip to the City Zoo. Although Plaintiff is amenable to the general policy of drug testing, as demonstrated by his prior consent to random drug testing just a few months earlier, he objected to the timing of the test which would have forced him to forsake his family obligations. Despite this inconvenience, Plaintiff agreed to stay beyond his shift for the drug test, requesting permission to telephone his wife so that she may make alternative transportation arrangements. When this request was denied, Plaintiff refused to take test rather than neglect his family duties. The Court considers Plaintiff's interest in

maintaining his familial responsibilities to be wholly legitimate and reasonable. The inconvenience to Plaintiff and his family cannot be underestimated.  In order to take the drug test, Plaintiff would have had to make alternative transportation arrangements at 6:30 AM on a Monday morning, a challenging task unto itself.  In addition, Plaintiff would have disappointed his daughter and her school to whom he had agreed to chaperone a school-sponsored field trip. Plaintiff's privacy interest to not be subject to the unreasonable and intrusion administration of the drug testing policy had not been diminished or compromised by either the Plaintiff's or the City's prior actions, nor by the federal and administrative regulations which did not provide that such drug testing could take place outside of work hours.

The City's asserted interest in administering the drug test is detection and deterrence of drug abuse.  The Court likewise agrees that this is a legitimate and reasonable objection. However, the City has failed to persuade the Court as to both the immediacy of their concern and the efficacy of the manner in which the test was administered in detecting and deterring drug abuse.  The City asserts that timing of the test was reasonable because Plaintiff was aware that he was subject to random drug testing.  The City further argues that in order to maintain the randomness of the testing process and increase the likelihood of deterrence and detection, it is important to administer the test at random times, rather than at the beginning of a work shift, as Plaintiff requested.  In addition, the City contends that although Plaintiff's name was selected four days earlier for the drug testing, he could not be tested because he was off-site at a training program.  The City further points out that administrative regulations require that Plaintiff be given no more than two hours notice of any drug test.  Thus once the supervisor informed Plaintiff that his name was selected for testing, Plaintiff was required to immediately report for the test.  The

22

City's arguments are not well-taken.  There is no evidence in the record before the Court indicating that an employee must complete the drug testing within a certain time period of his name being selected.  Although the employee is given only two hours to complete the test once informed that his name was selected, the City clearly has much discretion in determining when to inform the employee of the need to submit to a drug test.  In this case, the City exercised this discretion by allowing Plaintiff to remain in a training program for two days after his name was selected for the random drug test.  Moreover, once Plaintiff reported to his work shift on Sunday, April 22, several hours passed before he was finally informed that he should report to the drug test facility.  In light of these several delays, the City's arguments that immediacy is a central component to effective detection and deterrence is undermined.  Since the City had already waited four days to administer the drug-test, the seems to be no legitimate reason why the City could not have waited until Plaintiff's next shift later that evening to inform Plaintiff that he had been selected for a random drug-test.  Moreover, the Court is not persuaded that the goals of deterrence and detection would not be served by administering the test at a more convenient time in the beginning of an employee's shift.  Whether the test is administered in the beginning or end of a shift would still accomplish the detection goals of the City.  In addition, an employee who knows he is subject to random drug testing at any time would be as deterred from drug use whether the test was administered in the beginning or end of a shift.  The City next asserts that the test was not administered earlier in Plaintiff's shift because the supervisor did not arrive on site until 5:30 AM.  The City does not explain why another supervisor could not administer the test earlier in the night.  Moreover, while administrative regulations require that the drug test be given within two hours of notification to the employee, the City offers no real justification for this policy

23

related to deterrence and detection for this administrative policy.  While, in *Chandler*, the

Supreme Court observed that a drug testing program which gave 30 days notification to

employees was not well designed because it was easy for any drug-using candidates to avoid

detection, the City has not proffered any reason why strict adherence with the two hour policy

was necessary the effective administration of the drug policy in Plaintiff's case.  A more

reasonable time period for administering the test could have just as easily accomplished the City's

goals. Furthermore, the Court is disturbed by the inflexibility demonstrated by Defendants in

administering the test.  Although acknowledging that the Plaintiff was scheduled to depart work

in less than an hour, the City made no inquiry into the nature of Plaintiff's personal obligations.

While the Court recognizes that there are work-related emergencies which would require an

employee to work overtime hours with little notice, the City's random drug-testing requirement in

these circumstances hardly seems to be of the immediacy to require an employee to disregard his

prior familial commitments.  Significantly, the City does not contend that there was enough time

for Plaintiff to complete the test within his shift, merely that there was enough time for him to

"report for" the test.  Reporting for the test without having the test administered would hardly

further the City's goals of detection and deterrence.  Finally, the City offers no justification for

their refusal to allow Plaintiff to telephone his wife so that she may make alternative

transportation arrangements. The evidence taken as a whole indicates that the timing of Plaintiff's

drug test was motivated purely by the City's administrative convenience, rather than the goals of

detection and deterrence.

Under these circumstances, the Plaintiff's private interest in maintaining the integrity of

his familial commitments greatly outweighs the City's interest in administering its drug detection

24

and deterrence policy, given the discretion the City has in choosing the timing of the test. Unlike the testing policies upheld in *Skinner* and *Von Raab*, the City possessed significant discretion in the administration of the testing and exercised this discretion in an entirely unreasonable manner. Rather, like the Defendants in *19 Solid Waste Dep. Mech. v. City of Albuquerque*, 156 F.3d 1068, 1073, the City appeared to be driven by concerns for administrative convenience.

As a final note, the Court is greatly disturbed by the evidence that the City used the drug testing policy and the threat of termination to harass, intimidate and coerce the Plaintiff into disregarding his family duties. While random drug testing may further legitimate goals of dissuading drug abuse, such a policy should not come at the expense of the larger social goals of family unity, stability and harmony. Here, the City failed to strike a proper balance between private and public interests by administering the drug testing policy in an unreasonable, inflexible and coercive manner. The egregious nature of the City's actions highlight the importance of case-by-case analysis in determining the reasonableness of a search and seizure under the Fourth Amendment. In this case, Plaintiff has demonstrated a genuine issue of material fact as to whether Defendants violated his Fourth Amendment rights in the administration of its drug testing policy. As such, Defendant's motion for summary judgment on Plaintiff's drug testing claim is denied.

B.   <u>Motion to Dismiss Individual Defendants</u>

Defendants also move to dismiss the individual defendants Lawrence Rael and Anne Watkins from this count for failure to state a claim. At the time of Plaintiff's termination Lawrence Rael was the Chief Administrative Officer for the City of Albuquerque, while Anne Watkins was the City Transit Department Director. Plaintiff fails to allege any conduct by these individuals that violated his Fourth Amendment rights. In order to maintain a claim for

25

constitutional deprivation, a Plaintiff must show personal involvement or participation by

Defendant.  Mere supervisory status is not enough to support liability.  *See Mitchell v. Maynard*,

80 F.3d 1433, 1441 (10th Cir. 1996).  The Court agrees that there is no evidence demonstrating a

personal involvement of either individual defendant in the circumstances surrounding the

administration of the drug testing policy on April 22, 1996.  Although Anne Watkins was the

administrator who ultimately terminated Plaintiff, it does not appear that she exercised any

authority concerning the drug test on April 22, 1996.  As such, the Fourth Amendment claim

against both individual defendants is dismissed.

      **WHEREFORE,**

      **IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment

Based as to Plaintiff's Due Process and Equal Protection Claims **[Doc. No. 20]** is hereby

**GRANTED**; Defendants' Motion for Summary Judgment as to Plaintiff's Breach of Contract

Claim is hereby **[Doc. No. 22] GRANTED**; and Defendants' Motion for Summary Judgment as

to Plaintiff's Drug Testing Claim and Motion to Dismiss Individual Defendants **[Doc. No. 24]** is

hereby **DENIED** as to the merits of Plaintiff's drug testing claim and **GRANTED** as to the

motion to dismiss individual defendants Anne Watkins and Lawrence Rael.

      **DATED** this 26th day of July, 2000.

                         _____

                         MARTHA VÁZQUEZ
                         UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff
Paul Livingston

Attorney for Defendants
Victor Valdez